

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**EASTERN DIVISION**

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 2 4 2015

JAMES W. McCORMACK, CLERK
By: _____
DEP CLERK

TOMICHO McDOWELL

        Plaintiff,

  -against-

MIDLAND FUNDING, LLC
A California Corporation

        Defendant.

Civil Action No. 2:15 CV64-JLH

**JURY TRIAL DEMANDED**

This case assigned to District Judge Holmes
and to Magistrate Judge Ray

## ORIGINAL COMPLAINT

Plaintiff, Tomicho McDowell (McDowell), by his undersigned counsel brings this action against Midland Funding, LLC (Midland), and states:

### STATEMENT OF JURISDICTION AND VENUE

1.    Jurisdiction of this Court arises pursuant to 28 U.S.C. §1331, 15 U.S.C. §1692k(d) and 28 U.S.C. §1367 for pendant State law claims.

2.    This action arises out of Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq., and violations of the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §4-88-107(a)(10).

3.    The acts and events complained of in this Complaint occurred within Forrest City, St. Francis County, Arkansas.

4.    Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because the events giving rise to the claims occurred here, Plaintiff resides here, and Defendant transacts business here.

1

## PARTIES TO THE CLAIM

5.     The averments set forth in paragraphs 1-4 are adopted herein and incorporated as if set forth word for word.

6.     McDowell is a resident of Forrest City, St. Francis County, Arkansas, and is a "consumer" as defined by 15 U.S.C. §1692a(3), and/or "any person" as defined by 15 U.S.C. §1692d.

7.     At the time of the incident described further herein, Midland was a corporation duly authorized to conduct business in the State of Arkansas as a "debt collector," as that term is defined by 15 U.S.C. §1692a(6) and is registered and licensed with the Arkansas State Board of Collection Agencies, and attempting to collect a "debt," as defined in 15 U.S.C. §1692a(5).

8.     Midland is being served via its registered agent:

> Corporation Service Company
> 300 Spring Building, Suite 900
> 300 S. Spring Street
> Little Rock, AR 72201

## FACTUAL BACKGROUND

9.     The averments set forth in paragraphs 1-8 are adopted herein and incorporated as if set forth word for word.

10.    Midland filed a lawsuit against McDowell in the District Court of St. Francis County, Arkansas on September 26, 2014 alleging a consumer debt.

11.    The lawsuit and attached affidavit alleges McDowell defaulted on a credit card account obligation with the original creditor, CitiBank, NA/Sears. A copy of that suit is attached hereto as "**Exhibit 1**" and incorporated as if set forth word for word.

12.    Midland asserted it purchased and was assigned the account.

2

13.     The Complaint filed by Midland, and the attached affidavit, reflect an amount due of $1,729.61.

14.     Upon information and belief, the date of default was August 2012.

15.     Upon information and belief, the amount allegedly owed upon default was $1,431.

16.     Upon information and belief, the amount claimed in the lawsuit filed by Midland contains interest and late charges accrued after the default date, as well as after it was charged off by the original creditor.

17.     The Truth in Lending Act (TILA) regulates the type of account at issue in this case.

18.     TILA requires a creditor to send periodic statements to the debtor each billing cycle if there is an outstanding balance on an account where a finance charge is imposed. 15 U.S.C. §1637(b).

19.     That required periodic statement must contain certain required information which describes what and how the creditor is assessing interest and finance charges. 15 U.S.C. §1637(b).

20.     Consistent with 15 U.S.C. §1637(b), Regulation Z also requires creditors to "mail or deliver a periodic statement as required by (12 C.F.R.) §226.7 for each billing cycle at the end of which an account has a debit or credit balance of more than $1 or on which a finance charge has been imposed." *Id.* At 12 C.F.R. §226.5(b)(2)(i).

21.     However, Regulation Z provides exceptions to this requirement that periodic statements be sent and enables creditors to *not* send those required periodic statements if the creditor does certain things.

3

22. One of those exceptions is if the creditor has charged off the account in accordance with loan-loss provisions and will not charge any additional fees or interest on the account. 12 C.F.R. §226.5(b)(2)(i).

23. Therefore, under applicable regulations, CitiBank was required to send periodic statements to McDowell until it "charged-off the account in accordance with loan-loss provisions and will not charge any additional fees or interest on the account." 12 C.F.R. §226.5(b)(2)(i).

24. Previous to the alleged purchase of the account by Midland from CitiBank, CitiBank charged off an account alleged to have been incurred by McDowell.

25. Because CitiBank had charged off the account, it was not required to send periodic statements to McDowell as would otherwise be required by law.

26. Therefore, after charging off the account, CitiBank did not send any billing statements regarding the account to McDowell.

27. CitiBank took advantage of the charge off exception to enable it to not be required to send periodic billing statements.

28. The legal trade-off for entitling CitiBank to take advantage of the charge off exception is that it was precluded by law from charging any additional fees or interest on the account.

29. Therefore, after the account was written off, CitiBank was precluded by law from charging additional fees or interest on the account because it had not sent out the periodic statements.

30. Midland professes to be in the same shoes as CitiBank due to its purchase and assignment of the account.

4

31.     Midland would not acquire any greater rights than CitiBank had at the time of the alleged purchase.

32.     By assessing interest and other charges for which there was no legal basis, Midland is in violation of **15 U.S.C §1692f(1)** which prohibits a debt collector from collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

33.     By assessing charges, namely interest and late charges after the date of default, which are not authorized by the agreement or law, Midland is in violation of **15 U.S.C. §1692e(5)** by taking action that cannot legally be taken.

34.     The Complaint further requests costs and for all other proper relief.

35.     Because "costs and all other proper relief" are not authorized by the agreement creating the debt, the Complaint seeks to collect amounts not authorized by contract in violation of **15 U.S.C. §1692f(1).**

36.     By not attaching the agreement upon which it is suing, Midland is making a false representation of the character, amount, or legal status of the debt in violation of **15 U.S.C. §1692e(2)(A).**

37.     By not attaching the agreement upon which it is suing, Midland is engaging in unfair or unconscionable means in its attempt to collect the alleged debt in violation of **15 U.S.C. §1692f.**

38.     Midland has attached no evidence that it purchased the debt from the original creditor and; thus, is taking action which cannot legally be taken in violation of **15 U.S.C. §1692e(5).**

5

39.     Midland is in violation of **15 U.S.C. §1692e(10)** by making false representations and engaging in deceptive means in attempting to collect the debt by its inability to document any agreement between McDowell and any creditor.

40.     At the time it commenced the action against McDowell, Midland possessed insufficient evidence and intended not to further investigate in violation of **15 U.S.C. §1692(e)(5).**

41.     By seeking to collect amounts in excess of the amount owed at default, Midland is seeking to collect amounts not owed in violation of **15 U.S.C. §1692e(2)(A)** which prohibits the false representation of the character, amount, or legal status of any debt.

42.     Midland's conduct violates the FDCPA for which strict liability applies pursuant to 15 U.S.C. §1692, et seq.

43.     Midland's conduct violates the FDCPA for which statutory damages apply pursuant to 15 U.S.C. §1692k(a)(2)(A).

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

44.     The averments set forth in paragraphs 1-43 are adopted herein and incorporated as if set forth word for word.

45.     Portfolio is in violation of the following sections of the Fair Debt Collection Practices Act as alleged above:

a.      15 U.S.C. §1692e(2)(A): Making a false representation of the character, amount, or legal status of any debt;

b.      15 U.S.C. §1692e(5): Taking action that cannot legally be taken or that is not intended to be taken;

6

c.  15 U.S.C. §1692e(10): The use of any false representation or deceptive means to collect any debt;

d.  15 U.S.C. §1692f: Using unfair or unconscionable means to collect or attempt to collect any debt;

e.  15 U.S.C. §1692f(1): The collection of any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

## VIOLATION OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT

46.  The averments contained in paragraphs 1-45 are hereby incorporated as if set forth word for word.

47.  By representing that the principal amount owed by McDowell was $1,729.61 when, upon information and belief, the principal amount owed was $1,431.00, Midland was engaged in false and deceptive acts pursuant to Ark. Code Ann. §4-88-107(a)(10).

## DAMAGES

48.  The averments set forth in paragraphs 1-47 are adopted herein and incorporated as if set forth word for word.

49.  As a direct and proximate result of the occurrence made the basis of this lawsuit, McDowell is entitled to the following damages:

a.  actual costs, expenses and attorney fees pursuant to 15 U.S.C §1692(k)(a)(3);

b.  statutory damages in the maximum amount of: $1,000.00 pursuant to 15 U.S.C. §1692(k)(a)(2)(A).

c.  actual damages pursuant to 15 U.S.C. §1692k(a)(1)

d.  actual damages and attorney fees pursuant to Ark. Code Ann. §4-88-113(f).

## DEMAND FOR JURY TRIAL

50. The averments set forth in paragraphs 1-49 are adopted herein and incorporated as

if set forth word for word.

51. McDowell demands a jury trial on all issues so triable.

## PRAYER

WHEREFORE, McDowell prays that:

1. He be granted statutory damages pursuant to the 15 U.S.C. §1692k(a)(2)(A);

2. He be granted actual damages pursuant to the 15 U.S.C. §1692k(a)(1);

3. He be granted costs and attorney fees pursuant to 15 U.S.C. §1692k(a)(3).

4. He be granted actual damages and attorney fees pursuant to Ark. Code Ann. §4-88-113(f).

Respectfully submitted,

By:

Todd Wooten, Esq.   ABN 94034
**WOOTEN LAW FIRM**
2226 Cottondale Lane, Suite 210
Little Rock, Arkansas 722202
Telephone: (501) 218-6064
todd@wootenlaw.net

Attorney for Plaintiff

8

## IN THE DISTRICT COURT OF SAINT FRANCIS COUNTY, ARKANSAS
## CIVIL DIVISION

**MIDLAND FUNDING LLC AS SUCCESSOR IN
INTEREST TO CITIBANK, N.A./SEARS PREMIER CARD**                    **PLAINTIFF**

VS.                                Case No. CV - 14 -367

**TOMICHO MCDOWELL**                          SEP 26 2014
**279 1/2 SFC 360**
**FORREST CITY, AR 72335**                          **DEFENDANT(S)**

DISTRICT COURT
OF ST. FRANCIS CO., AR

## C O M P L A I N T

      **COMES NOW** MIDLAND FUNDING LLC AS SUCCESSOR IN INTEREST TO CITIBANK, N.A./SEARS PREMIER CARD (the "Plaintiff"), by and through its attorneys, Finkelstein, Kern, Steinberg, & Cunningham, and for its complaint against TOMICHO MCDOWELL (the "Defendant(s)"), states:

1.      Jurisdiction and venue is proper because the Defendant(s) reside in this county.

2.      The Plaintiff is owed by the Defendant(s) a debt on credit account number XXXX-XXXX-XXXX-9885.

3.      The Plaintiff acquired the debt on this account from the originator of the account or its assignee evidenced by the sworn statement attached and incorporated by reference Exhibit A.

4.      The Plaintiff has all rights and remedies to this debt.

5.      The Defendant(s) received a credit card for the above-referenced account.

6.      By virtue of using this credit card, the Defendant(s) agreed to make all payments and pay all charges assessed to the account according to the terms of the account. See attached and incorporated by reference Exhibit B.

7.      Defendant(s) failed to make payment on the account pursuant to the terms of the account, and there is an outstanding balance due, after the giving of all credits, in the sum of $1,729.61 on the account as evidenced by the sworn account attached and incorporated by reference Exhibit C. Plaintiff also seeks costs.

8.      This account is now past due and remains unpaid, despite the demands of Plaintiff.

      **WHEREFORE**, Plaintiff prays for a judgment against the Defendant(s) in the amount of

**EXHIBIT**
**1**

$1,729.61, for its cost incurred in this matter, and for all other proper and legal relief to which it may be entitled.

Respectfully submitted,

|            | Finkelstein, Kern, Steinberg & Cunningham |
| Address:   | P. O. Box 1 |
|            | Knoxville, Tennessee 37901 |
| Phone:     | (865) 525-0238 |
| Fax:       | (865) 523-5138 |

By: _____

Matthew Kezhaya
ABN 2014161
Attorney for Plaintiff



Redacted

## BILL OF SALE AND ASSIGNMENT

THIS BILL OF SALE AND ASSIGNMENT, dated February 24, 2014, is by Citibank, N.A., a national banking association organized under the laws of the United States, located at 701 East 60th Street North, Sioux Falls, SD 57117 (the "Bank") to Midland Funding LLC ("Buyer"), a limited liability company organized under the laws of the State of Delaware, with its headquarters/principal place of business at 3111 Camino Del Rio North, Suite 1300, San Diego, CA 92108.

For value received and subject to the terms and conditions of the Purchase and Sale Agreement dated February 19, 2014, between Buyer and the Bank (the "Agreement"), the Bank does hereby transfer, sell, assign, convey, grant, bargain, set over and deliver to Buyer, and to Buyer's successors and assigns, the Accounts described in Exhibit 1 and the final electronic file.

With respect to information for the Accounts listed in Asset Schedule, to the best of the Bank's knowledge, the Bank represents and warrants to Buyer that (i) the Account information constitutes the Bank's own business records and accurately reflects in all material respects the information in the Bank's database; (ii) the Account information was kept in the regular course of business; (iii) the Account information was made at or near the time by, or from information transmitted by, a person with knowledge of the data entered into and maintained in the Account's database; and (iv) it is the regular practice of the Bank's business to maintain and compile such data.

**Citibank, N.A.**

By: _____
        (Signature)

Name: _____ Patricia Hall _____

Title: __Financial Account Manager__

This is an attempt to collect a debt
and any information obtained will be used
for that purpose. This communication is
from a debt collector.

 Redacted



# Account Statement

Send Notice of Billing Errors and Customer Service Inquiries to:
SEARS CREDIT CARDS
PO BOX 6283, Sioux Falls, SD 57117-6283

# sears Sears Card®



Customer Service:
searscard.com
Account Inquiries:
1-800-917-7700

**Account Number:** [REDACTED] 9885

| Summary of Account Activity | |
|---|---|
| Previous Balance | $1,795.27 |
| Payments | -$0.00 |
| Other Credits | -$0.00 |
| Purchases | +$0.00 |
| Cash Advances | +$0.00 |
| **Fees Charged** | **+$35.00** |
| **Interest Charged** | **+$28.34** |
| New Balance | $1,858.61 |
| Past Due Amount | $505.07 |

| | |
|---|---|
| Credit Limit | $0.00 |
| Available Credit | $0.00 |
| Amount Over Credit Limit | $0.00 |
| Statement Closing Date | 02/06/2013 |
| Next Statement Closing Date | 03/08/2013 |
| Days in Billing Cycle | 28 |

## Payment Information

| | |
|---|---|
| New Balance | $1,858.61 |
| Minimum Payment Due | $587.41 |
| Payment Due Date | March 5, 2013 |

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee up to $35.

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 15 years | $3,556 |
| $69 | 3 years | $2,500 (Savings=$1,056) |

If you would like information about credit counseling services, call 1-877-337-8188.

Your account is seriously past due. Amount past due is shown above. Arrangements for future payments should be made immediately.

Please see the enclosed privacy notice for important information.

## TRANSACTIONS

| Trans Date | Description | Reference # | Amount |
|---|---|---|---|
| **FEES** | | | |
| 02/05 | LATE FEE | | $ 35.00 |
| | **TOTAL FEES FOR THIS PERIOD** | | **$ 35.00** |

8 SE 4

NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION     Page 1 of 6     This Account is issued by Citibank, N.A.

----

↑ Please detach this portion and return with your payment to insure proper credit. Retain upper portion for your records. ↑

# Sears Card®

†Past Due Amount is included in the Minimum Payment Due.

| Your Account Number | Payment Due Date | New Balance | Past Due Amount† | Minimum Payment Due | Amount Enclosed |
|---|---|---|---|---|---|
| [REDACTED] 9885 | MARCH 5, 2013 | $1,858.61 | $505.07 | $587.41 | $ |

**SAVE STAMPS, TIME... AND TREES!**    Visit Account Online and register now for Online Bill Pay, Paperless Statements and More.



MR TOMICHO D MCDOWELL

FORREST CITY, AR [REDACTED]

Make Checks Payable to:
SEARS CREDIT CARDS
PO BOX 183081
COLUMBUS, OH 43218-3081

This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.

Print address changes above in blue or black ink

**Information About Your Account.**

**How to Avoid Paying Interest on Purchases.** Your payment due date is at least 25 days after the close of each billing cycle. We will not charge you any interest on purchases if you pay your New Balance by the payment due date each month. This is called a grace period on purchases. If you do not pay the New Balance in full by the payment due date, you will not get a grace period on purchases until you pay the New Balance in full for two billing cycles in a row. We will begin charging interest on cash advances and balance transfers (if available on your account) on the transaction date.

If you have a balance subject to a deferred interest promotion and that promotion does not expire before the payment due date, that balance (the "excluded promotional balance") is excluded from the amount you must pay in full to get a grace period. However, you must still pay any separately required payment on the excluded promotion. In billing cycles in which payments are allocated to deferred interest balances first, the deferred interest balance will be reduced before any other balance on the account. However, you will continue to get a grace period on purchases so long as you pay the New Balance less any excluded promotional balances in full by the payment due date each billing cycle.

In addition, certain promotional offers may take away the grace period on purchases. Other promotional offers not described above may also allow you to have a grace period on purchases without having to pay all or a portion of the promotional balance by the payment due date. If either is the case, the promotional offer will describe what happens.

**How We Calculate Your Balance Subject to Interest Rate.** We use a daily balance method (including current transactions) to calculate interest charges. To find out more information about the balance computation method and how the resulting interest charges were determined, contact us at the Account Inquiries number on the front.

**Balance Transfers.** Balance transfer amounts are included in the "Purchases" line in the Summary of Account Activity (if balance transfers are available on your account).

**Transaction Date.** The Transaction Date shown on the statement is also the Sale Date.

**Credit Reporting Disputes.** If you think we reported inaccurate information to a credit bureau write us at the Customer Service address shown on the front.

**Report a Lost or Stolen Card Immediately.** Call the Account Inquiries number shown on the front.

**What To Do If You Find A Mistake On Your Statement**

If you think there is an error on your statement, write to us at the address for billing inquiries and correspondence shown on the front of your statement.

In your letter, give us the following information:

- Account information: Your name and account number.
- Dollar amount: The dollar amount of the suspected error.
- Description of problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:

- Within 60 days after the error appeared on your statement.
- At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors in writing. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

**What Will Happen After We Receive Your Letter**

When we receive your letter, we must do two things:

1. Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error.
2. Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the bill is correct

While we investigate whether or not there has been an error:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

After we finish our investigation, one of two things will happen:

- If we made a mistake: You will not have to pay the amount in question or any interest or other fees related to that amount.
- If we do not believe there was a mistake: You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your bill is wrong, you must write to us within 10 days telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us.

If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.

**Your Rights If You Are Dissatisfied With Your Credit Card Purchases**

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

To use this right, all of the following must be true:

1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these are necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.
3. You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us in writing at the address for billing inquiries and correspondence shown on the front of your statement.

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.

EM    SMC-TGI-SCC-SCP-HIFs 07/12

071204 130 030-9-E-9-D--12/01/97-93--P--0--7-402-0-0---01/10/13-PISB-January 9, 2013-0-0-V
N---

**Important Payment Instructions.**

**Right to Prepay Your Account.** You may pay all or part of your account balance at any time. However, you must pay, by the payment due date, at least the minimum payment due.

**Crediting Payments.** If we receive your payment in proper form at our processing facility by 5 p.m. local time there, it will be credited as of that day. A payment received there in proper form after that time will be credited as of the next day. Allow 5 to 7 days for payments by regular mail to reach us. There may be a delay of up to 5 days in crediting a payment we receive that is not in proper form or is not sent to the correct address. The correct address for regular mail is the address on the front of the payment coupon. The correct address for courier or express mail is the Express Payments Address shown below.

**Proper Form.** For a payment sent by mail or courier to be in proper form, you must:
- **Enclose** a valid check or money order. No cash, gift cards, or foreign currency please.
- **Include** your name and account number on the front of your check or money order.

**If you send an eligible check with this payment coupon, you authorize us to complete your payment by electronic debit. If we do, the checking account will be debited in the amount on the check. We may do this as soon as the day we receive the check. Also, the check will be destroyed.**

**Copy Fee.** We charge $3 for each copy of a billing statement that dates back 3 months or more. We add the fee to the regular purchase balance. We waive the fee if your request for the copy relates to a billing error or disputed purchase.

**Payment Options Other Than Regular Mail.**

- **In-Store Payments (Where Available).** Any payment in proper form accepted in-store will be credited as of that day. However, credit availability may be subject to verification of funds. Not all stores accept payments. Contact your local store to see if in-store payments are accepted at that location.
- **Online Payments.** Visit the web address on the front and sign up for online payments. Enrollment may take a few days. If we receive your request to make an online payment by 5 p.m. Eastern time, we will credit your payment as of that day. If we receive your request to make an online payment after that time, we will credit your payment as of the next day. For security reasons, you may be unable to pay your entire New Balance with your first online payment.
- **AutoPay Service.** If you are enrolled in this service, your payment amount will be deducted automatically each month on your due date from the bank account you select.
- **Pay by Phone Service.** You may use this service any time to make a payment by phone. You will be charged $14.95 if a representative of ours helps expedite your payment. Call by 5 p.m. Eastern time to have your payment credited as of that day. If you call after that time, your payment will be credited as of the next day. We may process your payment electronically after we verify your identity.
- **Express Payments.** You can send payment by courier or express mail to the Express Payments Address. This address is: Payments Department, 1500 Boltonfield Street, Columbus, OH 43228. Payment must be received in proper form at the proper address by 5 p.m. Eastern time to be credited as of that day. All payments received in proper form at the proper address after that time will be credited as of the next day.

Account: **** **** **** 9885

## TRANSACTIONS (cont.)

| Trans Date | Description | Reference # | Amount | |
|---|---|---|---|---|

### INTEREST CHARGED

| 02/06 | INTEREST CHARGE ON PURCHASES | | $ | 28.34 |
|---|---|---|---|---|
| | TOTAL INTEREST FOR THIS PERIOD | | $ | 28.34 |

| 2013 Totals Year-to-Date | |
|---|---|
| Total Fees Charged in 2013 | $70.00 |
| Total Interest Charged in 2013 | $58.66 |

### INTEREST CHARGE CALCULATION

Your Annual Percentage Rate (APR) is the annual interest rate on your account.

| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
|---|---|---|---|
| PURCHASES | | | |
| REGULAR | 20.40% (D)(V) | $1,811.38 | $28.34 |

(V) = Variable Rate   (D) = Daily

This is an attempt to collect a debt
and any information obtained will be used
for that purpose. This communication is
from a debt collector.



MIDLAND FUNDING LLC, as successor in
interest to CITIBANK, N.A.

    Plaintiff

-vs-                        AFFIDAVIT OF KRISTIE WEGNER

TOMICHO MCDOWELL,

    Defendant(s).

---

      Kristie Wegner, whose business address is 16 Mcleland Road Suite 101, St. Cloud, MN 56303, certifies and says:

1.    I am employed as a Legal Specialist and have access to pertinent account records for Midland Credit Management, Inc. ("MCM"), servicer of this account on behalf of MIDLAND FUNDING LLC, the plaintiff in this action. Plaintiff purchases portfolios of delinquent accounts from either the original creditor or a subsequent purchaser of the account, and thereafter assigns the accounts to MCM to be serviced. Plaintiff does not operate and / or maintain a computer system. MCM holds the computer records and account information for accounts purchased by plaintiff. I am a competent person over eighteen years of age, and make the statements herein based upon personal knowledge of those account records maintained on plaintiff's behalf. Plaintiff is the current owner of, and/or successor to, the obligation sued upon, and was assigned all the rights, title and interest to defendant's CITIBANK, N.A. account (hereinafter "the account"). I have access to and have reviewed the records pertaining to the account and am authorized to make this affidavit on plaintiff's behalf.

2.    I am familiar with and trained on the manner and method by which MCM creates and maintains its business records pertaining to this account. The records are kept in the regular course of business. It was in the regular course of business for a person with knowledge of the act or event recorded to make the record or data compilation, or for a person with knowledge to transmit information thereof to be included in such record. In the regular course

This is an attempt to collect a debt
and any information obtained will be used
for that purpose. This communication is
from a debt collector.

---

AFFIDAVIT OF KRISTIE WEGNER - 1



AFFRECORD

14-7025

of business, the record or compilation is made at or near the time of the act or event. The relevant financial information concerning the account includes the following:

3.   MCM's records show that the defendant(s) owed a balance of $1729.61 as of 2014-05-27.

I certify under penalty of perjury that the foregoing statements are true and correct.

JUN 2 4 2014

<u>                    </u>
Date

Kristie Wegner

STATE OF MINNESOTA

COUNTY OF STEARNS

JUN 2 4 2014

Signed and sworn to (or affirmed) before me on _____ by Kristie Wegner.



**EMILY PERSONS**
Notary Public - **Minnesota**
My Commission Expires Jan. 31, 2018

Notary Public

My commission expires:_____

TN6
Finkelstein, Kern, Steinberg &Cunningham

This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.

AFFIDAVIT OF KRISTIE WEGNER - 2

  AFFRECORD  14-7025